

Here the petition shows that at all times beginning with January 1, 1950, through March 31, 1951, during which time the services were performed, the Veterans Administration refused to recognize plaintiff's claim and pay thereon. The services had been completed and plaintiff could have sued. The limitation statute, supra, gave plaintiff six years within which to sue, and the six years began to run at the latest on March 31, 1951, when the last services were rendered. The petition in this case was filed June 27, 1957, more than six years thereafter and is time barred.

The fact that during the period between January 1, 1950, when plaintiff started to render services, and June 27, 1957, when the petition was filed, plaintiff sought administrative determination before the Veterans' Education Appeals Board did not toll the statute of limitations. The appeal was not mandatory, but permissive only. Art Center School v. United States, 142 F. Supp. 916, 136 Ct.Cl. 218. Unless pursuance of administrative remedies is a prerequisite to suit, the statue of limitations is not suspended or tolled by the pursuance of administrative remedies. Girault v. United States, 135 F.Supp. 521, 133 Ct.Cl. 135; Mistretta v. United States, 120 F.Supp. 264, 128 Ct.Cl. 41; Nassif v. United States, 125 Ct.Cl. 379; Thomas v. United States, 125 Ct. Cl. 76; Gray v. United States, supra; Tan v. United States, 102 F.Supp. 552, 122 Ct.Cl. 662; John P. Moriarity, Inc. v. United States, 97 Ct.Cl. 338; Levine v. United States, supra.

Plaintiff in opposition contends that the statute of limitations did not begin to run on its claim until April 16, 1956, because the Veterans Administration on said date renegotiated the tuition rate of Contract V3056V–330. It is evident that any facts relating to a renegotiation of the contract rate are completely irrelevant to this suit. The services in question were not rendered pursuant to such written contract, and the determination as to the contract rate would have nothing to do with the fair and reasonable basis.

Plaintiff then says in the alternative that if the statute of limitations became operative on April 1, 1951, as contended by the Government, then the period of seven months during which its books and records were in the custody of a Federal grand jury should be deducted from the 6-year period. These are not facts alleged in the petition and therefore not properly before the court. In any event, the fact that plaintiff's books and records were in the custody of a Federal grand jury was not an impediment to the filing of this suit.

For the reasons stated, plaintiff's claim is barred by the statute of limitations, and its petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.

Miriam C. SCHULHOFF

v.

UNITED STATES.

No. 438–56.

United States Court of Claims.

May 7, 1958.

**412**

Kenneth S. Carey, San Francisco, Cal., for plaintiff.

Richard M. Roberts, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland, Washington, D. C., on the brief, for defendant.

MADDEN, Judge.

The plaintiff sues for a refund of income taxes. She filed her income tax return for the calendar year 1947, showing a tax of $2,464.96, and paid the tax. The income on which the tax was computed had been received by the plaintiff as her share of the income of a purported partnership with her husband. As we shall see, the taxing authorities later raised a question as to the validity of the partnership, for income tax purposes.

The trial commissioner of this court, having heard the evidence, made findings that in the early 1940's the plaintiff, who had formerly been employed as a legal secretary, and her husband entered into a partnership which engaged in the advertising business; that the plaintiff rendered service as the manager of the office; that at first only the plaintiff and her husband were in the partnership but that later a Mr. Verlin was taken in as a partner; that during the existence of the partnership the plaintiff and her husband maintained separate bank accounts; that her share of the partnership earnings went into her own bank account and was not subject to withdrawal by her husband; that during the existence of the partnership she filed separate income tax returns showing her income from the partnership earnings, except that in certain years when it was advantageous for her and her husband to file joint returns they did so; that when she entered into the partnership she intended to become a partner.

The plaintiff's only exception to the findings just recited is that they are irrelevant. Of course, they are highly relevant. They form a basis for the legal conclusion that the plaintiff's tax return properly showed that the income which she returned was her own, and was taxable to her. It follows from these findings that she paid only the tax which she owed. It would be a rare situation indeed where a taxpayer who made a return showing a tax lawfully due, and paid that tax, could later lawfully claim a refund of it, unless Congress had, in the meantime, retroactively changed the tax law.

The plaintiff says that she is in that rare situation. At some time after the plaintiff and her husband had filed their individual income tax returns for 1947, and the plaintiff had paid the tax shown by her return, they, no doubt at the request of the Treasury Department, filed separate forms consenting to the extension of the time for the assessment of their income taxes for the year 1947 to June 30, 1954. On June 10, 1954, the District Director of Internal Revenue for the Upper Manhattan, New York, District where the plaintiff had paid her tax, wrote the plaintiff that it had been determined that she had overpaid her tax by the entire amount which she had paid, because all of the income which she reported was taxable to her husband. The District Director's letter suggested that the plaintiff should make a claim for refund of the tax she had paid and enclosed a form for that purpose.

On the same day, June 10, 1954, the Commissioner of Internal Revenue sent a 90-day deficiency notice letter to the plaintiff's husband, advising him that the Commissioner intended, at the expiration of the 90-days, to assess against him a tax on the income which his wife had reported on her return. Whether the tax was paid by the husband, and if so

whether he filed a claim for refund, we do not know.

The plaintiff filed her claim for refund on June 24, 1954, which was in time. Her claim has never been acted upon. More than six months having elapsed from the time of filing her claim for refund, she brought the instant suit.

We can think of no theory upon which the plaintiff's claim might be based. There is no element of estoppel in the facts. She took no action except the filing of her claim for refund, and refrained from no action, because of the District Director's letter. There was no novation. There was no tripartite agreement that if the husband would assume liability for the tax on the income in question, the wife's liability would be released. There was nothing but a unilateral statement by the District Director that the plaintiff had paid a tax which she did not owe. As our findings show, the District Director's statement was wrong. There is no showing that the District Director had authority to forgive and refund a tax which was owed and was paid. If in a private transaction a merchant writes a letter to his debtor advising him that he has overpaid his account, and that the overpayment will be refunded to him, and then discovers that there was no overpayment, the debtor cannot successfully sue on the mistaken advice.

The plaintiff urges that there was an account stated, or an "account settled" between her and the Government. To effect an account stated, there must be a pending account, and a mutual agreement that it shall be in the amount stated, whether that be more or less than one or the other of the parties had been claiming. In the instant case the plaintiff had no pending dispute with the Government. She had made her return and paid her tax. The District Director's letter was, as we have seen, a unilateral erroneous statement that she had not owed the tax which she paid.

The Government's dealing with the other taxpayer, the husband, was no concern of the plaintiff. On the facts which we have found, the assessment of the tax to the husband would have been as erroneous as the refund of the tax to the plaintiff. He could have defeated the proposed assessment in the Tax Court, or, if he paid the tax, could have recovered it by a suit in an appropriate court. But none of these events would have affected the plaintiff's situation.

The Government points to section 7405 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7405, which provides that if a refund is erroneously made, the Government may recover the refund by suit. It would seem that, under this statute, the plaintiff would have had no right to keep the refund if she had received it.

In a situation in which the decisions of courts were as unpredictable as they were in the cases of family partnerships, it would seem that ordinary prudence on the part of the Commissioner of Internal Revenue would have required him to do what he did in this case. He refrained from issuing a certificate of overassessment to the plaintiff, because there was no assurance that his assessment of a deficiency against the husband would be sustained by the courts. It would not have been proper for him to subject the Treasury to the risk that the income in question would go completely untaxed. The District Director properly suggested to the plaintiff that she file a claim for refund, so that the period of limitation for the filing of such a claim would not run against her. She has had ample opportunity to sue for the refund of her tax on the merits of the question whether the income which she returned as her own was in fact her own. She has not chosen to submit that question to judgment. We think she has no other basis for recovery, and her petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER, and LITTLETON, Judges, concur.